**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA HARRIS,<br>on behalf of Plaintiff and the class members<br>described below,<br><br>          Plaintiff,<br><br>    vs.<br><br>FSST MANAGEMENT SERVICES, LLC<br>d/b/a 605 Lending;<br>FIRST DIRECT MEDIATION, INC.;<br>STEVE CHRISTENSEN;<br>DUSTIN DERNIER;<br>and JOHN DOES 1-20,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Case No. 1:22-cv-1063 |

## COMPLAINT – CLASS ACTION

1.     Plaintiff Joshua Harris brings this action to secure redress from predatory and unlawful loans (such as Exhibit A) made by Defendant FSST Management Services, LLC d/b/a 605 Lending and collected by First Direct Mediation, Inc. ("First Direct Mediation"). Also sued are Steve Christensen and Dustin Dernier, who are or hold themselves out as officers of FSST Management Services, LLC, and John Does 1-20.

2.     Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq., and the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), treble damages under RICO (Count IV), and damages pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. (Count V).

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction under 28 U.S.C. §1331 (general federal question), 15 U.S.C. §1692k (FDCPA), 18 U.S.C. §1964 (RICO), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).  Jurisdiction may also exist under 28 U.S.C. §1332(d) (Class Action Fairness Act).

4.      This Court has personal jurisdiction over each Defendant because they knowingly participated in:

      a.      The making or collection of unlawful loans to Illinois residents.

      b.      The operation of an interactive website through which loans were made to residents of Illinois.  *Toys "R" Us, Inc., v. Step Two,* 318 F.3d 446, 454 (3rd Cir. 2003).

5.      Venue is proper because acts to obtain and collect the loans impacted Plaintiff in the District.

## PARTIES

### Plaintiff

6.      Plaintiff Joshua Harris is a resident of the Northern District of Illinois.

### Defendants

7.      Defendant FSST Management Services, LLC d/b/a 605 Lending is an online lender that offers loans to consumers at annual percentage rates of more than 700%. (Exhibit A) It purports to be an entity formed under the laws of, and claims to be owned and controlled by, the Flandreau Santee Sioux Tribe ("Tribe"), a federally-recognized Indian Tribe. (Exhibit A, page 1) It uses the address PO Box 305, Flandreau, SD 57028.

8.      On information and belief, the Tribe receives less than 3% of the revenues generated from the loans made by FSST Management Services, LLC.

9.      Steve Christensen holds himself out as the Chief Operating Officer of FSST Management Services, LLC. (Exhibit B) He may be found at 305 S. 13th Street, Flandreau, SD

2

57028-1544.

10.     Dustin Dernier holds himself out as the Chief Executive Officer of FSST Management Services, LLC. (Exhibit C) He may be found at 4313 SW Hickory Lane, Blue Springs, MO 64015-4518.

11.     Dernier has been associated with companies in the high-interest lending business, including eFinance Call Center Support and PDL Support.

12.     On information and belief, Dernier is not a member of the Tribe.

13.     Defendants John Does 1-20 are other entities and individuals involved in the lending activity complained of.

14.     The Tribe's involvement in the lending business is merely superficial.  On information and belief, the Tribe's only real contribution is providing a cloak of sovereign immunity for illegal lending activities.

15.     The Tribe has been connected with a number of websites offering and making high-interest loans, most of which are no longer operating. These include:

a.     Bottomdollarpayday.com;

b.     Paradise Cash Advance;

c.     Platinum B. Services;

d.     Actionpayday.com;

e.     Everestcashadvance1.com;

f.     Fastefunds.com;

g.     Ipltoday.com;

h.     Mynextdaycash.com;

i.     Northplainsfinancial.com;

j.     Redleaflending.com;

k.     Rushmorefinancial.Net;

l.     Theviploanshop1.com.

3

16.     On information and belief, these websites represent "rent-a-tribe" schemes with different, non-tribal investor or investors.

17.     On information and belief, the non-tribal investors:

a.      Obtains consumer reports (credit reports) as agent or authorized service provider for FSST Management Services, LLC;

b.      Evaluate and determine whether to make the loans applied for through the website;

c.      Electronically transmit loan information to a person located on the Tribe's reservation who, after a cursory, pro forma review, grants the loan granted "final" approval;

d.      Fund the loans using money kept in bank accounts that they control and to which the Tribe has no access;

e.      Devise all material policies and procedures relating to the lending operation.

18.     Defendant First Direct Mediation is a corporation organized under the law of New York with its principal offices at 3380 Sheridan Dr., Suite 105, Amherst, NY 14226. Its registered agent is Spiegel & Utrera P.A., P.C., 1 Maiden Lane, 5th Floor, New York, NY 10038.

19.     Defendant First Direct Mediation is engaged in the business of a collection agency, using the mails, telephone system, and Internet to collect debts allegedly owed to others.

20.     Defendant First Direct Mediation states on its website that "First Direct Mediation Inc. is a privately owned agency which specializes in negotiations between clients and consumers to reach a resolution that benefits both parties. We strive to create a better model for debt collection that works with our clients and the debtor to achieve repayment and fully settle debts. . . . In most cases, we are able to work with the consumer to develop reasonable payment plans to allow the consumer to voluntarily pay the full amount owed. We aim to avoid involving the legal system, but our legal division is prepared to take action when necessary. In cases where legal action cannot be avoided, our attorneys may pursue civil action against the consumers."

(http://www.firstdirectmediation.net/about-us)

21.     Defendant First Direct Mediation is a debt collector as defined in the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

22.     Defendants John Does 1-20 are other natural or artificial persons involved in the making, underwriting, financing and collection of the "605 Lending" loans. Their identity, which has been hidden as a key part of the underlying scheme, will be easily established in this litigation.

## FACTS RELATING TO PLAINTIFF HARRIS

23.     On or about May 18, 2021, Plaintiff Harris took out an installment loan from FSST Management Services, LLC d/b/a 605 Lending  (Exhibit A). The loan had an amount financed of $450 and an annual percentage rate of 775.30%.

24.     Exhibit A is a standard form loan agreement used by FSST Management Services, LLC d/b/a 605 Lending on a regular basis.

25.      FSST Management Services, LLC d/b/a 605 Lending regularly makes loans to individuals in Illinois at such rates.

26.     The loan was obtained for personal, family or household purposes and not for business purposes.

27.     At no time has FSST Management Services, LLC d/b/a 605 Lending had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

28.      FSST Management Services, LLC d/b/a 605 Lending nevertheless advertises and makes loans to Illinois residents at rates greatly exceeding 9%.

29.     Defendant FSST Management Services, LLC d/b/a 605 Lending sought out Illinois residents for such loans.

30.     Plaintiff has made payments on the loan.

31.     After Plaintiff had difficulty making the payments, Defendant First Direct Mediation repeatedly called and emailed Plaintiff seeking payment of the loan made to Plaintiff by "605

Lending."

32.     First Direct Mediation threatened to sue Plaintiff in order to collect monies allegedly due on the "605 Lending" loan.

33.     The calls and emails were made and sent by First Direct Mediation on behalf of "605 Lending," as its agent.

34.     As a result of these communications, Plaintiff made a payment to First Direct Mediation.

35.     It is the policy and practice of Defendant First Direct Mediation to collect loans made to Illinois residents at more than 9% interest by entities which do not have licenses from the Illinois Department of Financial and Professional Regulation or bank or credit union licenses.

36.     Defendants claim amounts are still owed on the loan.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

37.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 et seq. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

38.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

39.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

40.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this

6

Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

41.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

42.     Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

43.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

44.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet

7

or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC,* No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/ MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services,* No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend,* No. 17 CC 133 (https://www.idfpr.com/dfi/ CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20De sist%20Order%20Bob%208%2016%202017.pdf)

## RENT-A-TRIBE SCHEMES

45.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

46.      In such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

47.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

48.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

49.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort,* 629 F.3d 1173, 1183 (10th Cir. 2010).

8

50. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

51. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

52. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

53. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

54. Tribes and their officers are not free to operate outside of Indian lands without conforming their conduct in these areas to federal and state law." *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 128 (2d Cir. 2019).

55. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy

Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y.). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

**COUNT I - DECLARATORY AND INJUNCTIVE**
**RELIEF AGAINST ILLEGAL CONDUCT**

56.     Plaintiff incorporates paragraphs 1-55.

57.     This claim is against all Defendants.

58.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs must repay the loans made to them.

59.     Declaratory relief will resolve such controversy.

60.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

**CLASS ALLEGATIONS**

61.     Plaintiff brings this claim on behalf of two classes, pursuant to Fed.R.Civ.P. 23(a) and (b)(2). Alternatively, Plaintiff seeks (b)(3) certification.

62.     Class A consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "605 Lending" at more than 9% interest (c) which loan has not been paid in full.

63.     Class B consists of (a) all individuals with Illinois addresses (b) to whom a loan was made at more than 9% interest (c) by an entity which does not have a license from the Illinois Department of Financial and Professional Regulation or a bank or credit union charter, (d) which loan has not been paid in full, and (e) which First Direct Mediation is seeking to collect as of the filing of this action, or has collected money on or after a date five years prior to the filing of this action.

64.     Plaintiff may alter the class definitions to conform to developments in the case and discovery.

10

65. Each class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, and the fact that debts are normally placed for collection in portfolios of similar debts, there are at least 40 class members.

66. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

67. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

68. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

69. Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

70. The class members are entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.     Injunctive relief;

     ii.     Declaratory relief;

    iii.     Restitution of all amounts collected on the loans from members of the class;

    iv.     Costs of suit; and

     v.     Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

71.     Plaintiff incorporates paragraphs 1-55.

72.     This claim is against all Defendants.

73.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

74.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

75.     Plaintiff brings this claim on behalf of two classes, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

76.     Class A consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of FSST Management Services, LLC d/b/a 605 Lending at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

77.     Class B consists of (a) all individuals with Illinois addresses (b) to whom a loan was made at more than 9% interest (c) by an entity which does not have a license from the Illinois Department of Financial and Professional Regulation or a bank or credit union charter, (d) on which loan First Direct Mediation has collected money (e) on or after a date two years prior to the filing of suit.

78.     Plaintiff may alter the class definitions to conform to developments in the case and discovery.

79.     Each class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, and the fact that debts are normally placed for collection in portfolios of similar debts,  there are at least 40 members of each class.

80.     There are questions of law and fact common to the class members, which

12

common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

81.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

82.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

83.     A class action is superior for the fair and efficient adjudication of this matter, in that:

     a.     Individual actions are not economically feasible.

     b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

     i.     Damages as provided in 815 ILCS 205/6.

     ii.     Attorney's fees, litigation expenses and costs of suit; and

     iii.     Such other and further relief as the Court deems proper.

### COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

84.     Plaintiff incorporates paragraphs 1-55.

85.     This claim is against all Defendants.

86.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

87.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

### CLASS ALLEGATIONS

88.     Plaintiff Harris bring this claim on behalf of two classes, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

89.     Class A consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of FSST Management Services, LLC d/b/a 605 Lending at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

90.     Class B consists of (a) all individuals with Illinois addresses (b) to whom a loan was made at more than 36% interest (c) by an entity which does not have a license from the Illinois Department of Financial and Professional Regulation or a bank or credit union charter, (d) on which loan First Direct Mediation has collected money (e) on or after March 23, 2021.

91.     Plaintiff may alter the class definitions to conform to developments in the case and discovery.

92.     Each class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, and the fact that debts are normally placed for collection in portfolios of similar debts, there are at least 40 members of each class.

93.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

94.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

95.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

96.     A class action is superior for the fair and efficient adjudication of this matter, in that:

a.     Individual actions are not economically feasible.

b.     Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

14

      i.      Compensatory damages;

      ii.     Punitive damages;

      iii.    Attorney's fees, litigation expenses and costs of suit; and

      iv.    Such other and further relief as the Court deems proper.

## COUNT IV  – RICO

97.    Plaintiff incorporates paragraphs 1-55.

98.    This claim is against Steve Christensen and Dustin Dernier, who are the RICO "persons."

99.    All loans made in the name of FSST Management Services, LLC d/b/a 605 Lending to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

100.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

101.    FSST Management Services, LLC d/b/a 605 Lending is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

102.    Defendants Steve Christensen and Dustin Dernier are associated with this enterprise, in that they direct the making of loans by FSST Management Services, LLC d/b/a 605 Lending.

103.    Defendants Steve Christensen and Dustin Dernier conducted or participated in the conduct of the affairs of FSST Management Services, LLC d/b/a 605 Lending through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

104.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

105.    Plaintiff brings this claim on behalf of a class.

106.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of FSST Management Services, LLC d/b/a 605 Lending  at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

107.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

108.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

109.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.     Whether FSST Management Services, LLC d/b/a 605 Lending is an "enterprise."

      c.     Whether Defendants Steve Christensen and Dustin Dernier are associated with FSST Management Services, LLC d/b/a 605 Lending.

      d.     Whether Defendants Steve Christensen and Dustin Dernier, conducted or participated in the affairs of FSST Management Services, LLC d/b/a 605 Lending through a pattern of making and collecting unlawful loans.

110.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

111.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

112.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

     i.   Treble damages;

     ii.   Attorney's fees, litigation expenses and costs of suit; and

     iii.   Such other or further relief as the Court deems proper.

## **COUNT V – FDCPA**

113.  Plaintiff incorporate paragraphs 1-55.

114.  This claim is against First Direct Mediation.

115.  Defendant violated the FDCPA, 15 U.S.C. §§1692e, 1692e(2), 1692e(10), 1692f and 1692f(1), by collecting usurious loans made to Illinois residents.

116.  First Direct Mediation's communications represent or imply that the underlying debts are legally enforceable. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

117.  Section 1692e provides:

False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2)  The false representation of—

   (A)  the character, amount, or legal status of any debt; . . .

(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

118.  Section 1692f provides:

Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)  The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

17

119.    The Federal Trade Commission has stated: "Legality of charges. A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (B) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either (A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent." *FTC Official Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988).

120.    All "605 Lending" and other loans made to Illinois residents by lenders that are neither banks nor credit unions and do not have consumer lending licenses from the Illinois Department of Financial and Professional Regulation are unenforceable under Illinois law because of the laws relating to usury.

## CLASS ALLEGATIONS

121.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

122.    The class consists of (a) all individuals with Illinois addresses (b) from whom First Direct Mediation collected money (c) on a loan made by an unlicensed lender at more than 9% interest (d) which communication was made on or after a date 1 year prior to the filing of suit and on or before a date 30 days after the filing of suit and (e) resulted in the payment of money. An "unlicensed lender" is one that is not a bank or credit union and does not have a consumer lending license of any type from the Illinois Department of Financial and Professional Regulation.

123.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, and the fact that debts are normally placed for collection in portfolios of similar debts, there are at least 40 class members.

124.    There are questions of law and fact common to the class members, which

18

common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a.    Whether the loans at issue are unenforceable.

    b.    Whether the attempted collection of the loans violates the FDCPA.

125.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

126.    A class action is appropriate for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights.

    c.    Congress prescribed class actions as the principal means of enforcing the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

    i.    Statutory damages;

    ii.    Actual damages;

    iii.    Attorney's fees, litigation expenses and costs of suit; and

    iv.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200

(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman