IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA HARRIS, on behalf of plaintiff and the class members, | |
| Plaintiff, | |
| v. | Case No. 22 C 1063 |
| FSST MANAGEMENT SERVICES, LLC d/b/a 605 LENDING; FIRST DIRECT MEDIATION, INC.; STEVE CHRISTENSEN; DUSTIN DERNIER; and JOHN DOES 1-20, | Judge Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' FSST Management Services, LLC, First Direct Mediation, Inc., Steve Christensen, Dustin Dernier, and John Does 1-20 Motion to Dismiss (Dkt. No. 18). For the reasons stated herein, the Court will deny the Motion.

## I. BACKGROUND

### A. Factual and Procedural Background

FSST Management Services, LLC ("FSST") is a lending entity affiliated with the Flandreau Santee Sioux Tribe — a federally recognized Indian tribe located in Moody County, South Dakota. The controversy arises out of FSST Defendants' involvement in a lending enterprise operating through the website

www.605lending.com.    Defendant First Direct Mediation, Inc.
("First Direct Mediation") was responsible for collecting the
loans and Defendants Steve Christensen and Dustin Dernier served
as COO and CEO, respectively, of FSST.

Plaintiff Joshua Harris ("Harris") filed his class action
complaint (Dkt. No. 1) on behalf of two classes pursuant to FED.
R. CIV. P. 23(a) and (b)(3).  The Complaint alleges that Defendants'
lending operation is what is referred to as a "rent-a-tribe"
lending scheme.  This scheme consists of tribal lenders' attempt
to evade state and federal consumer protection laws by claiming
their high-interest lending practices are owned and operated by
Indian tribes and therefore entitled to tribal sovereign immunity.
Plaintiff seeks a declaratory judgment that the loans are void, an
injunction against their collection, and damages pursuant the
Illinois Interest Act, the Predatory Loan Prevention Act, and the
Illinois Consumer Fraud Act.  The Complaint also brings a RICO
claim against the individual Defendants and a Fair Debt Collection
Practices Act claim against First Direct Mediation. Plaintiff
alleges Defendants engaged in usury and criminal lending practices
by collecting short-term online installment loans from Illinois
residents at interest rates far higher than the enforceable rate
of 9%. The Complaint alleges that Plaintiff Harris took out an

installment loan from FSST in an amount of $450 with an interest rate of 775.30% pursuant to a Loan Agreement ("Harris Agreement").

Defendants moved to dismiss the Complaint and compel arbitration (Dkt. No. 18) under Fᴇᴅ. R. Cɪᴠ. P. 12(b)(3) for improper venue in light of the mandatory arbitration provision in the loan agreement entered into between FSST and Plaintiff. (Dkt. No. 1-1 ("Harris Agmt.")) Defendants argue in the alternative they are entitled to sovereign immunity and thus immune from the suit pursuant to Fᴇᴅ. R. Cɪᴠ. P. 12(b)(1) and/or 12(b)(6), and for failure to state a claim under Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6).

Defendants moved to bifurcate the Court's consideration of their Motion to Dismiss (Dkt. No. 27) so that the Court first decide the threshold matter of whether to compel arbitration before deciding their other grounds for dismissal. The Court granted the Motion to Bifurcate. For the reasons stated herein, the Motion to Dismiss pursuant to Fᴇᴅ. R. Cɪᴠ. P. 12(b)(3) and to Compel Arbitration is denied.

## II.  <u>**LEGAL STANDARD**</u>

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A court may invalidate an arbitration agreement based on generally applicable contract defenses like

fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark,* 581 U.S. 246, 252 (2017) (internal quotations and citation omitted).

A motion to compel arbitration involves certain gateway issues, including whether (1) the parties agreed to arbitrate and (2) the language of an arbitration clause, if one exists, applies to the dispute at hand. *United Natural Foods, Inc. v. Teamsters Local 414,* 58 F.4th 927, 933-34 (7th Cir. 2023). The Supreme Court in *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 69 n.1 (2010) established that parties can agree to arbitrate even these preliminary gateway questions provided any such agreement is "clear and unmistakable." This is known as a delegation provision, which "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 529 (2019) (quoting *Rent-A-Center,* 561 U.S. at 70). The Supreme Court has concluded that when a litigant specifically challenges the enforceability of an arbitration agreement with a delegation clause, the challenge must be submitted to the arbitrator unless the plaintiff has lodged a specific objection to

the delegation clause. *Rent-A-Center,* 561 U.S. at 72. If such a specific objection is made, the court may consider it. *Id.* at 71.

### III.  <u>ANALYSIS</u>

Defendants assert that Plaintiff's claims squarely qualify as a "dispute" under the arbitration agreement, and thus the arbitration provision should be enforced and Plaintiff's Complaint dismissed for improper venue under FED. R. CIV. P. 12(b)(3). Plaintiff responds that the entire loan agreement, which implicitly includes the delegation and arbitration provisions, are unenforceable because (1) they serve as an improper prospective waiver of federal and state rights; and (2) they are substantively and procedurally unconscionable.

### A.  <u>Prospective Waiver</u>

The Harris Agreement defines "dispute" as including "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this agreement, the validity and scope of this Agreement, and any claim or attempt to set aside the agreement." (Harris Agmt. at 6.) Courts in this district and elsewhere have found that similar language evidences the parties' agreement to delegate gateway issues to the arbitrator. *See Kemph v. Reddam,* 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015). We agree and find this language constitutes a delegation provision.

For the Court to determine the validity of a loan agreement with a delegation provision, the plaintiff must specifically challenge the delegation provision. *Rent-A-Center,* 561 U.S. at 72. Plaintiff contends that both the arbitration and delegation provisions are unenforceable under the prospective waiver doctrine. The Court finds this suffices as a specific challenge to the delegation provisions such that the Court may determine the validity of the agreement.

An arbitration agreement is unenforceable under the prospective waiver doctrine if it prospectively waives a party's right to pursue statutory remedies. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637 n.19 (1985). Although parties possess broad latitude to specify the rules under which their arbitration will be conducted, they must preserve the ability to assert federal statutory causes of action so that "the statute[s] will continue to serve both [their] remedial and deterrent function[s]." *Id.* at 637.

### 1. *Enforceability of Delegation Provision*

The Seventh Circuit has not had occasion to assess the enforceability of delegation and arbitration provisions in loan contracts involving tribal lenders. However, courts in the Second, Third, and Fourth Circuits have refused to enforce "arbitration agreements that limit a party's substantive claims to those under

tribal law, and hence forbid federal claims from being brought." *Williams v. Medley Opportunity Fund II, LP,* 965 F.3d 229, 238 (3d Cir. 2020). The loan agreements in those cases, like here, included underlying loan provisions, delegation provisions, choice of law clauses (both in the arbitration provision specifically, and the agreement writ large), and an arbitration agreement and sought similarly high annual interest rates. *See Hayes v. Delbert Servs. Corp.,* 811 F.3d 666, 668 (4th Cir. 2016); *Gibbs v. Haynes Invs.,* 967 F.3d 332, 335 (4th Cir. 2020); *Dillon v. BMO Harris, N.A.,* 856 F. 3d. 330, 333 (4th Cir. 2017); *Hengle v. Treppa,* 19 F. 4th 324, 342 (4th Cir. 2021); Williams, 965 F. 3d at 238-39; *Gingras v. Think Finance,* 922 F. 3d 112, 117 (2d. Cir. 2019). Though there is not complete circuit uniformity in how courts approach this issue, the weight of the circuit case law assesses this issue as follows: Is there a specific challenge to delegation provision? If so, does the choice of law clause prospectively waive federal or state rights? If so, the entire loan agreement, and implicitly the delegation and arbitration provisions, are also unenforceable.

The "Governing Law," or choice-of-law clause governing the entire Harris Agreement provides:

> "This agreement . . . shall be governed by the applicable tribal and substantive law of the Flandreau Santee Sioux tribe, including, but not limited to the Tribal Financial Services Regulatory Act, without regard to conflicts of law principles, except that the arbitration provisions will be governed by the United States Federal

> Arbitration Act. For the avoidance of doubt, it is not intended and shall not be interpreted that the State of South Dakota has lawful authority to regulate the Business or any activities of the Lender or its officers, employees, or agents, or this Agreement."

(Harris Agmt. at 8.)

The choice-of-law clause governing specifically the arbitration provision provides:

> "The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitation, and shall honor claims of privilege recognized at law."

(*Id*. at 7.)

The Harris Agreement is somewhat unique in that it does not explicitly reference the application of tribal law in the choice-of-law clause governing the arbitration provision. Instead, it applies Tribal law to the agreement as a whole, yet to the arbitration provision it applies only "applicable substantive law consistent with the FAA." (*Id*. at 7.) This district has interpreted *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52 (1995) to mean that "a general choice of law provision in a contract will not extend to the arbitration clause, absent specific evidence the parties intended it to do so." *Wal-Mart Stores, Inc. v. Helferich Patent Licensing,* 51 F.Supp. 3d 713, 718-19 (N.D. Ill. 2014). Here, the Court finds sufficient evidence that FSST intended for the general choice-of-law provision applying tribal law to apply to the arbitration provision as well.

The arbitration provision provides both that (1) the arbitrator's award may be filed "ONLY with the courts of the Flandreau Santee Sioux Tribe," and that (2) if a "final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, [that] the FAA does not apply to this transaction, then the lender's agreement to arbitrate shall be governed by the arbitration law of [the] Flandreau Santee Sioux Tribe." (Harris Agmt. at 7 (emphasis in original).) Because an arbitrator's award may be filed only with tribal courts, the Court understands that all "final non-appealable judgments" will originate with tribal courts. These tribal courts can then, for "any reason" determine the FAA does not apply and trigger the application of tribal law. This effectively allows tribal courts to apply tribal law to an arbitration award in every instance, and the Court thus interprets the "animating purpose" of the arbitration agreement is to incorporate tribal law to the exclusion of federal and state law, representing an "integrated scheme to contravene public policy." *Hayes,* 811 F. 3d at 676 (quoting E. Allan Farnsworth, *Farnsworth on Contracts* § 5.8, at 70 (1990). The court in *Hengle* also refused to read a similar choice-of-law arbitration provision that the arbitrator "shall apply applicable substantive Tribal law consistent with the FAA" as negating the general choice-of-law clause selecting tribal law. 19 F.4th at

341. The Court similarly refrains from reading this arbitration choice-of-law clause as contradictory to the general choice-of-law clause, despite no explicit reference to ***Tribal*** law in the arbitration provision.

While neither choice-of-law provision in the Harris Agreement explicitly precludes the application of federal law, courts in other districts have condemned loan agreements under the prospective waiver doctrine where the agreement as a whole exhibits an *attempt* to evade the application of state or federal law. *Hayne Invs.,* 967 F.3d at 342 (the "practical effect" of the loan agreements' terms requiring the arbitrator to apply tribal law and render a decision consistent with tribal law was to "implicitly disavow" all other law, and to preempt the application of contrary federal law); *see also Hengle,* 19 F.4th at 339. As in those cases, the choice-of-law clauses here operate together as a prospective waiver because the application of tribal law would require the arbitrator to determine whether the arbitration provision "impermissibly waives federal substantive rights without recourse to federal substantive law." *Id*. at 338. Likewise, the Court sees nothing in the tribe's ordinance here that guarantees parties' ability to pursue let alone vindicate federal and state statutory rights.

Courts look to other terms in the loan agreements to determine whether the agreement as a whole reinforces a prospective waiver. *See Haynes Invs.,* 967 F.3d at 342; *Hayes,* 811 F.3d at 676. Here, other terms in the Harris Agreement reinforce the attempted contravention of public policy:

> "The Lenders' inclusion of these disclosures does not mean that the lender or any subsequent holder of the Agreement consents to application of any state or federal law to the lender, the Loan, or this agreement."

> **"Usury.** This transaction evidenced by this Agreement does not violate any Law of the Flandreau Santee Sioux Tribe pertaining to usury of the payment of interest on loans."

(Harris Agmt. at 2, 8.)

The Court finds this language reinforces the implicit disavowals of federal and state law. The courts in *Dillon, Gibbs v. Haynes,* and *Gibbs v. Sequoia* found similar language that disclosures did not constitute "consent" to any "application of state or federal law" reinforced such disavowals. *Dillon,* 856 F.3d at 336; *Sequoia,* 966 F.3d at 290; *Haynes Invs.,* 368 F.Supp. 3d 901, 924 (E.D. Va. 2019), *aff'd,* 967 F. 3d 332.

A delegation clause that through the choice-of-law provision and terms writ large requires an arbitrator to determine whether a valid and enforceable arbitration agreement exists without access to substantive federal law results in the "sort of farce" courts have previously refused to enforce under the FAA. *Hengle v.*

- 11 -

*Treppa,* 19 F.4th 324, 339 (4th Cir. 2021). For this reason, the delegation clause in the Harris Agreement is unenforceable as a prospective waiver in violation of public policy.

### 2. Enforceability of Arbitration Agreement

Because the delegation provision is unenforceable, and Plaintiff's challenge to it included arguments related to the entire arbitration agreement, this Court, rather than an arbitrator, may determine the arbitrability of the agreement. *Sequoia,* 966 F.3d at 292. The choice-of-law provision is not severable from the broader arbitration agreement, thus rendering the entire arbitration agreement contrary to public policy and unenforceable. *Dillon,* 856 F.3d at 337.

Defendants argue that whether there is a prospective waiver is a consideration addressable only at the arbitration award stage, not the arbitration enforcement stage. Defendants contend the issue is for the arbitrator, not this Court, to consider and cite two cases involving an international arbitration agreement — *Mitsubishi,* 473 U.S. at 637 n.19, and *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 541 (1995). This precise argument has been advanced and rejected by numerous courts in the context of tribal lending arbitration agreements because "considerations about the difficulty of applying the public policy defense neutrally on an international scale at the arbitration

enforcement stage are not at play here." *Hengle,* 19 F.4th at 342, n.8 (internal quotations omitted) (citing *Haynes Invs.,* 967 F.3d at 344); *see also Sequoia,* 966 F.3d at 294.

Defendants also argue that the loan agreement on its face does not prospectively waive statutory rights. Here, Defendants point to the fact that the loan agreement differs from the other "rent-a-tribe" cases in which the loan agreements *expressly* foreclosed the application of federal law. But Defendants cite no case that conditioned the refusal to enforce a delegation clause on an *express* waiver of prospective rights. Defendants entirely ignore that courts have found "implicit" prospective waivers through the "effect" of the entire agreement. *See Haynes Invs.,* 967 F.3d at 342. It is no surprise that Defendants would be careful not to explicitly disclaim federal law while still expecting to benefit from an implicit prospective waiver in a tribal arbitral setting.

Defendants also counter by pointing to specific provisions that reference the FAA or federal law:

> "If allowed by *applicable statute or applicable law*, the arbitrator may award you statutory damages and/or your reasonable attorneys' fees and expenses."

> "This arbitration clause is made pursuant to a transaction involving Indian commerce and shall be governed by the United States Federal Arbitration Act (FAA)."

(Harris Agmt. at 7) (emphasis added).

- 13 -

This Court follows courts in other circuits and concludes the references above to federal law or the FAA "read in context, do not mend the prospective waiver of federal law wrought by the arbitration provision's other terms." *Hengle,* 19 F.4th at 342 (citing *Hayes*, 811 F.3d at 671); *see also Haynes Invs., 967 F.3d at 342 n.6. Defendants in *Hengle* argued that a nearly identical clause as one to which Defendants point — that the arbitration provision "is made pursuant to a transaction involving Indian commerce and shall be governed by the United States Federal Arbitration Act" — precluded a prospective waiver. *Hengle,* 19 F.4th at 340-41. The Fourth Circuit refused to construe this language as a "portal through which all federal and state law defenses to arbitrability are imported into the agreement and made available for the application by the arbitrator." *Id*. at 341. So too does this Court.

Finally, Defendants argue that while the agreement applies tribal law, the substantive tribal law requires FSST comply with federal law. Defendants note the Tribe's Lending and Consumer Protection Act requires lenders to "comply with . . . all other applicable Tribal and federal laws including, without limitation, the Federal Consumer Protection Laws." (Dkt. No. 59 at 8.) But compliance with federal law in lending is not the same as making available the vindication of federal and state statutory rights in

an arbitral setting. Further, this precise argument was rejected by the Fourth Circuit in *Hengle,* where the Court highlighted the tribal law's inability to "permit Plaintiffs to assert their RICO claim for treble damages," and lack of a "private right of action for violation of its provisions or any federal laws." *Hengle,* 19 F. 4th at 343-44. Here, Defendants offer nothing to suggest the tribe's law accomplishes vindication of the rights Plaintiff seeks to vindicate under federal and state law.

## B. Unconscionability

Plaintiff separately contends the Loan Agreement is procedurally and substantively unconscionable, rendering the agreement to arbitrate unenforceable. Even if there were no prospective waiver of federal and state rights, the Court finds the loan agreement is unenforceable on the separate ground of unconscionability.

### 1. *Procedural Unconscionability*

Under Illinois law, a contractual provision may be unconscionable on either procedural or substantive grounds. *Jackson v. Payday Fin*., 764 F.3d 765, 777 (7th Cir. 2014) (citing *Razor v. Hyundai Motor Am.,* 854 N.E.2d 607, 622 (2006)). "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff

cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Id.*

Plaintiff argues the Harris Agreement is procedurally unconscionable because it applies tribal arbitration law which does not exist. The Court agrees.

The general choice-of-law clause governing the Harris Agreement applies tribal law. The choice-of-law clause governing the arbitration provision specifically applies "applicable substantive law consistent with the FAA," and that to the extent the FAA is inapplicable, "then the lender's agreement to arbitrate shall be governed by the arbitration law of Flandreau Santee Sioux Tribe." (Harris Agmt. at 7, 8.) Defendants concede that Flandreau Santee Sioux tribal arbitration law does not exist, (Dkt. No. 53-1 at 10), but assert tribal arbitration law is "irrelevant" because the agreement incorporates the FAA. Tribal arbitration law must be relevant when it is made an express term of the agreement. The agreement is procedurally unconscionable because the borrowers could not have ascertained or understood the arbitration law to which they were agreeing because it did not exist.

This is true even though the arbitration provision affords the parties the "right to select" the American Arbitration Association ("AAA") or JAMS to administer the arbitration. Though providing an organization like JAMS or AAA to "administer" an

- 16 -

arbitration is not necessarily the same as providing an arbitrator from that organization to *conduct* the arbitration, courts have interpreted it to mean such. *See, e.g., Williams v. Cashall,* 92 F.Supp. 3d 847, 852-53 (E.D. Wis. 2015); *Hayes v. Delbert Servs. Corp.,* 2015 WL 269483, at *4 (E.D. Va. Jan. 21, 2015), rev'd on other grounds. The Court acknowledges the availability of AAA and JAMS as arbitral forums resolves the issue that was present in *Jackson v. Payday*, 764 F.3d at 778-79. In *Jackson,* the arbitration was to be conducted "by the Cheyenne River Sioux Tribal Nation," even though such a tribal arbitration procedure did not exist. *Id*. While borrowers here are not relegated to the same illusory tribal arbitration forum as the borrowers in *Jackson*, the agreement remains unconscionable because it provides for the application of illusory tribal arbitration law. *See Williams v. Medley,* 965 F.3d at 236, 244 (application of tribal law in arbitral forum rendered agreement unenforceable despite availability of AAA or JAMS forum).

### 2. *Substantive Unconscionability*

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed," and "[i]ndicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights

imposed by the bargain, and significant cost-price disparity." *Kinkel v. Cingular Wireless LLC,* 857 N.E.2d 250, 267 (Ill. 2006) (internal quotation marks omitted).

Plaintiff advances three reasons why the loan agreement is substantively unconscionable: (1) it prospectively waives federal and state statutory rights, including rights pursuant to the Illinois Predatory Loan Prevention Act; (2) the arbitrator's award is reviewable only in tribal court; and (3) the tribe has no subject matter jurisdiction over the transaction.

First, Plaintiff argues that the choice-of-law clause applying tribal law is unconscionable because it specifically waives protection under the Illinois Predatory Loan Prevention Act ("PLPA") in violation of public policy. The PLPA expressly negates the ability of consumers to waive its protections. 815 ILCS 123/15-10-25. Even if the prospective waiver doctrine did not serve as a unique basis not to enforce an agreement, such a waiver would nevertheless render the agreement substantively unconscionable. *See Gingras,* 922 F.3d at 128. Defendants look to *Mori v. E. Side Lenders* for the proposition that Plaintiff must "first show he is entitled to the protections of Illinois law and public policy" before advancing any argument about improper waiver. 2015 WL 13654184, at *7 (N.D. Ill. Mar. 24, 2015). However, in *Mori,* the court had already compelled arbitration and

- 18 -

was entering judgment and assessing the merits of the arbitration award. In doing so, the court assessed which law should have governed the arbitration. *Id*. at *7. Yet the issue is here not which law governs but rather the enforceability of an arbitration agreement. Defendants also turn to *Kemph* to argue that such a question should be decided by the arbitrator. *Kemph,* 2015 WL 1510797, at *4. But in *Kemph,* the plaintiffs never specifically challenged the delegation provision. *Id*.

Second, in *Gingras,* the Second Circuit addressed a tribal loan agreement that provided tribal courts could set aside the arbitrator's award if it did not comply with tribal law. 922 F.3d at 128. Despite providing for AAA or JAMS as the arbitral forum, just as the Harris Agreement does, the Second Circuit in *Gingras* nevertheless found the agreement to be substantively unconscionable because tribal court review, unlike the "sharply limited federal court review" constrained by the FAA, "hands those courts unfettered discretion to overturn an arbitrator's award." 922 F.3d at 127-28. This "effectively insulates the tribe from any adverse award" and precludes litigants from having a fair chance of prevailing. *Id.* at 128. This Court agrees. Here, the loan agreement provides "the arbitrator's award may be filed ONLY with the courts of the Flandreau Santee Sioux Tribe." (Harris Agmt. at 7 (emphasis in original).) Handing exclusive review of an

- 19 -

arbitrator's award to a tribal court — even if that award originated from an AAA or JAMS arbitrator — permits a tribal court to apply its own law on its own terms when that law does not afford litigants the opportunity to vindicate their federal and state rights. *See Vimar Seguros,* 515 U.S. at 540 (noting that a lack of "subsequent opportunity for review" at the award-enforcement stage could run afoul of public policy).

The Court is unpersuaded by Defendants' contention that the agreement applies the FAA, which grants exclusive authority to vacate, modify, or correct an arbitration award to the U.S. district court where the award was made. Such an interpretation would conflict with the other terms of the arbitration agreement which require that only a tribal court may review an arbitration award and may determine for any reason that tribal law applies in its review. We must read the arbitration provision to give effect to all its terms and "to render them consistent with one another." *Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 63 (1995); *see also Babcock & Wilcox Co. v. Areva NP, Inc.,* 788 S.E.2d 237, 244 n.8 (Va. 2016) (affirming that each part of a contract must, if possible, be given effect and interpreted in light of all the other parts).

Third, the Seventh Circuit in *Jackson v. Payday* held that disputes regarding a tribal lending arrangement did not arise from

actions on reservation land and thus the tribe lacked subject matter jurisdiction over plaintiff borrowers. 764 F.3d at 785-86. Here, Defendants have not established a colorable claim of tribal jurisdiction.

This agreement's arbitration provision provides the borrowers waive their right to have a "court, other than the courts of the Flandreau Santee Sioux Tribe, to whose jurisdiction you explicitly consent during the term of the agreement" resolve any dispute. (Harris Agmt. at 6.) Defendants contend that Indian tribes may regulate the activities of "nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases or other arrangements," citing to *Montana v. U.S.,* 450 U.S. 544, 565 (1981). But as the *Jackson v. Payday* court reviewed in depth, a tribe "lacks jurisdiction to hear a claim based on that activity" where nonmember activity does not occur on the reservation or implicate tribal sovereign interests. 764 F.3d at 782 (citing *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 554 U.S. 316, 330 (2008)). Nor can nonmember borrowers "consent" to tribal jurisdiction since "a nonmember's consent to tribal authority is not sufficient to establish the jurisdiction of a tribal court." *Id*. at 783.

Defendants' focus on the activities of FSST, as opposed to the Plaintiff borrowers, is misplaced. It does not matter that

- 21 -

FSST operations are run from the reservation, or that debt collection policies are developed or supervised by employees on the reservation. Noticeably absent in Defendants' brief is any contention that the borrowers enter the reservation to apply, negotiate, execute, or pay the loans, despite language in the agreement stipulating that all negotiations for the agreement were entered into on the reservation. (Harris Agmt. at 8.) It is the activity of Plaintiff borrowers, and not FSST employees, over which Defendants must have jurisdiction. *See Jackson,* 764 F.3d at 782 n.42 ("tribal court's subject matter jurisdiction over a nonmember . . . is tethered to the *nonmember's* actions, specifically the *nonmember's actions on the tribal land*.") (emphasis in original). This Court finds that relegating exclusive review of arbitration awards to tribal courts which do not have subject matter jurisdiction over the borrowers renders the loan agreement unconscionable for the same reason that subjecting the borrowers to nonexistent tribal arbitration law renders the agreement unconscionable.

### IV. <u>CONCLUSION</u>

In summary, the Court concludes the Harris Agreement is unenforceable as a prospective waiver of federal and state statutory rights, and because the agreement is substantively and procedurally unconscionable. Thus, Defendant's Motion to Dismiss

and to Compel Arbitration is denied. The parties are ordered to submit a briefing schedule for the remaining bases on which Defendants move to dismiss.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 8/10/2023